## IN THE MATTER OF THE APPLICATION OF JOHN E. HUNT FOR MINNESOTA SOLDIERS BONUS.[1]

December 23, 1921.

No. 22,682.

**Army and navy—classification of married soldier by local draft board—error of bonus board.**

1. The local draft board could disregard the claim for deferred classification, on account of wife's dependency, made in his questionnaire by a person who had married subsequent to the enactment of the selective service act, and place him in class 1 without determining whether or not he married with the primary view of evading military service. Such board did not make any determination on the subject in relator's case, nor was the board requested so to do, and the bonus board and board of review erred in assuming that the local draft board had made such determination against relator, and in finding relator guilty of evasion upon the acts of the draft board.

**Fraud not proved by marriage after registration.**

2. The mere fact of relator's marriage after his registration and his designation in his questionnaire of class 4 as the proper one because

[1]Reported in 185 N. W. 943.

of the dependency of his wife, does not establish that he was guilty of fraud, or violation or evasion of the Selectitve Service Act or of any rule or regulation thereunder.

**Construction of 1921 amendment to Soldiers Bonus Law.**

3. The amendment of the bonus law, in 1921, by prohibiting the bonus boards from finding that persons who, after being rejected, subsequently married and then when again called into service claimed deferred classification because of the wife's dependency, were guilty of evading military service, cannot be construed as meaning that all not specifically included in the amendment are impliedly excluded.

Upon the relation of John E. Hunt the supreme court granted its writ of certiorari directed to the soldiers bonus board and soldiers board of review to review the decisions of those boards in reference to relator's application for a bonus. Order vacated and cause remanded.

*Donald S. Doty*, for relator.

*Clifford L. Hilton*, Attorney General, and *Albert F. Pratt*, Assistant Attorney General, for respondents.

HOLT, J.

Certiorari to the soldiers bonus board of review to determine the validity of the order denying the application of relator, John E. Hunt, for a soldier's bonus.

The petition and return show that relator was a citizen and resident of this state when war with Germany was declared. On June 5, 1917, he registered, stating on the registration card that he contemplated marriage soon. He was married June 16, 1917. On January 8, 1918, he complied with the draft regulations in respect to his questionnaire. All answers therein appear to have been true. He gave the date of his marriage and designated his wife as his dependent. She made oath to the supporting affidavit of the questionnaire. In response to the question how much the dependent had earned during the 12 months preceding, he stated that she was a dressmaker and earned $2.50 per day intermittently during the 5½ months of the 12. The questionnaire contained a space where the registrant might designate which one of the 5 classifications he

claimed, and also a space wherein the local draft board should designate the class he ought to be placed in. Relator claimed class 4. The draft board placed him in class 1. He accepted the classification made by the board, did not ask for a hearing and did not appeal. He was inducted into the military service, where he remained until honorably discharged. He is entitled to $180 under our soldiers' bonus acts, unless excluded by the restrictions placed on the meaning of the word "soldier" by the acts. As amended the law here pertinent reads:

"The word 'soldier', as used in this act, shall not be construed to mean, and shall not include any person who, at any time during the period of the war with Germany, sought to avoid service because of conscientious objections thereto, or because of alienage, or who has been at any time guilty of fraud or violation or evasion of the Selective Service Act or of the rules or regulations of the War Department in force thereunder * * * No person shall be deemed to have attempted to evade the Selective Service Act who claimed exemption on the ground of marriage, which marriage occurred after being rejected for enlistment or induction into the military or naval service subsequent to April 6, 1917." Laws 1919 [Ex. Sess.] p. 74, c. 49, § 4, as amended by Laws 1921, p. 774, chapter 471.

The return to the writ clearly shows that the application of relator was rejected solely because the documents attached to the return in the opinion of the bonus board and the board of review showed a violation, fraud, or evasion of the rules and regulations of the war department promulgated under the Selective Service Act of May 18, 1917. In this we deem that both the bonus board and the board of review misconstrued our bonus acts. Evasion was found from the simple fact that relator married after war was declared and then in his questionnaire claimed to be placed in class 4, whereas the local draft board placed him in class 1. There is nothing in the selective service act which forbids marriage or which exempts a married person from service. The only language therein, even remotely bearing on the subject is that the President is authorized to exempt or exclude from the selective draft, among others:

"Those in a status with respect to persons dependent upon them for support which renders their exclusion or discharge advisable." 40 St. 79, c. 15, § 4, enacted May 18, 1917.

No rules or regulations in force when relator married contained any caution against registrants marrying. And the only matter bearing on the subject when relator made his questionnaire is found in the rules and regulations promulgated by the war department under authority of the President on November 8, 1917. Therein are several pages on the subject of classification on account of dependency. It is quite patent that the authorities promulgating these rules never intended that the registrant, when given the opportunity to claim a class, should do so at the peril of being branded a violator or evader in case he did not claim the one which the local draft board thought proper. The rule referred to is rule 5 in section 72, Part 55, Classification Rules and Principles, which reads:

"On May 18, 1917, every person subject to registration had notice of his obligation to render military service to his country. The purpose of the Selective Service Law was not to suspend the institution of marriage among registrants, but boards should scrutinize marriages since May 18, 1917, and especially those hastily effected since that time, to determine whether the marriage relation was entered into with a primary view of evading military service and unless such is found not to be the case boards are hereby authorized to disregard the relationship so established as a condition of dependency requiring deferred classification under these regulations."

In the case of relator the local draft board was not asked to determine whether or not he married with the primary view of evading military service, and the record made by that board clearly shows that it did not do so, but placed relator in class 1 because rule 5 permitted that, whenever no determination was asked or made in respect to the primary purpose in then entering marriage, for rule 33 found in section 101 of said rules and regulations is: "The local board shall, in every case, indorse upon the questionnaire in the place provided (page 16) a minute of its decision and the reasons for the classification on all grounds of classification within the juris-

diction of the local board." The place provided under that rule in relator's questionnaire is left entirely blank by the local draft board, clearly indicating that it never determined the question whether the marriage of relator was an attempt at evasion of service.

Had there been a determination by the local draft board upon the subject of the primary purpose of relator in marrying when he did, it might have been accepted, at least, as prima facie evidence of his purpose by the bonus board and the board of review. But we take it these boards were required to ascertain the facts de novo. The legislature must have known that the mere classification by the local draft boards of a registrant did not pass on the question whether he had violated or evaded any rule or regulation of the war department in filling out his questionnaire. Furthermore, it was well known that local draft boards classified arbitrarily and without hearing or consideration where the registrant did no more to urge his claim to a deferred classification than answer the pertinent questions and indicate his desire in his questionnaire. The legislature also knew that the rules in respect to classification because of dependency received anything but uniform interpretation at the hands of the different local draft boards. In view of these well known facts, and others which, under the stress of war, prevented a just, fair and equal treatment of registrants by the local draft boards, no matter how well intentioned, the legislature, no doubt, deliberately specified in the bonus act that the bonus board and the board of review were to hear evidence and ascertain the status of the applicant as a soldier without regard to what the local draft board had determined. We conclude that, in the present case, insofar as either of these boards accepted as a fact that the local draft board's action indicated that relator was not entitled to the bonus, there was error.

We also think the respondent, as well as the bonus board, misconstrued the bonus law in holding that the fact of marriage after war was declared and the claim for a deferred classification because of the dependency of the wife, without more, consituted a violation, fraud or evasion which defeats the claim of an honorably discharged soldier to a bonus. The record clearly shows that such miscon-

struction and the erroneous assumption that the local draft board had found relator guilty of evasion alone caused the denial of the bonus. The bonus law makes the attempt of registrants to avoid service conclusive against them only when made on account of conscientious objections thereto, or on the ground of alienage. But in respect to the Selective Service Act, or the rules or regulations thereunder, he is not excluded from the appellation of soldier, unless he has been guilty of fraud, or violation or evasion thereof. As already stated, there is nothing, either in the Selective Service Act or the rules mentioned, which declares the request of a registrant for a classification other than in class 1, made in the space provided therefor in his questionnaire, a fraud or a violation or an evasion of the act or the rules. It is entirely clear that up to the moment when the draft board placed relator in class 1 on his questionnaire, that board had not considered what his primary purpose in marrying was. The draft board so classified because it was authorized by said rule 5 to disregard the marriage. Suppose relator married, not with the primary view of evading service, it was at that point open to him to prove that fact to the board, or he could waive the claim of dependency. If he then elected to waive a valid claim to be placed in class 4, it surely cannot be held to prove him guilty of evading service. And, on the other hand, suppose he had married with the view of evading service, but, when given the opportunity to establish that he did not, he chose not to do so, can it be said that he was guilty of evasion? We think not. Simply stating the facts truly in the questionnaire, and therein preferring a request in a space or blank designated for that purpose by the rules and regulations, cannot be an evasion or violation of such rules or regulations.

In behalf of respondent, it is argued that the amendment added in 1921 reading: "No person shall be deemed to have attempted to evade the Selective Service Act who claimed the exemption on the ground of marriage, which marriage occurred after being rejected for enlistment or induction into the military or naval service subsequent to April 6, 1917", indicates that no one who married subsequent to the date mentioned, April 6, 1917, and claimed exemption, is entitled to the benefit of the bonus law, unless he had been

rejected for service previous to his marriage. This contention is based on this proposition: "The express mention of one thing implies the exclusion of another" in a statute. Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L. R. A. (N. S.) 415. To us the only construction to give the amendment is that to one coming within its terms no board or person is permitted to find that he attempted to evade the service act by claiming exemption on the ground of marriage. In other cases there is authority to hear and determine the matter.

The bonus law cannot well be ascribed to a less worthy motive than the desire of a grateful people to partially reimburse the soldier for the pecuniary loss his service entailed and as an expression of appreciation for the great risk he faced. With such a motive it is unthinkable that the legislature meant to exclude any one from the benefits of this law who, perchance, misinterpreted some rule or regulation which neither worked a fraud nor amounted to a violation or evasion of the service he actually did perform. It is a remedial statute and should be liberally construed in favor of the intended beneficiaries.

Findings of fact of boards of this character are conclusive in certiorari, unless it is made to appear that a wrong principle of law has applied or there has been a demonstrable mistake of fact. We think the record here indicates clearly that, had correct principles of law been applied to the undisputed facts, relator's petition for the bonus would have been granted. The respondent board should have heard the evidence which relator desired to offer and then determined the question independently of the supposed action of the local draft board.

The order and determination of the respondent board is vacated and relator's application or petition remitted to respondent for hearing and determination.